Opinion
JOSEPH, J.*
This case involves the application of the federal Uniformed Services Former Spouse’s Protection Act (FUSFSPA) to the trial court’s post-McCarty[1] decision that a military pension over which the trial court retained jurisdiction was the separate property of the husband, Robert T. Sarles.
The interlocutory judgment of dissolution, including a reservation of jurisdiction over the parties’ respective interest in Mr. Sarles’ Marine Corps pension, was entered on January 24, 1979. The parties agreed:
“The court shall reserve and retain jurisdiction as to the community property interest and/or rights that the petitioner has in the respondent’s retirement/pension plan that respondent has through the United States Marine Corps, considering the fact that the respondent’s date of employment for retirement [purposes commenced on November 30, 1965], the parties were married on December 29, 1965, and the parties separated on January 15, 1978.
“The court shall reserve jurisdiction to supervise and enforce the distribution of the community property retirement/pension benefits taking into considera *26 tion that the respondent’s date of employment for retirement purposes commenced on November 30, 1965, the parties were married on December 29, 1965, and the parties separated on January 15, 1978.”
The decision in McCarty was announced on June 26, 1981. The following month Mr. Sarles’ moved to have the interlocutory judgment modified to declare the military pension to be his separate property.[2] The motion was granted.
The trial court declined the wife’s request to retain continuing jurisdiction over the pension. Mrs. Sarles then filed her notice of appeal. On September 8, 1982, FUSFSPA was signed into law to take effect on February 1, 1983.
Thus, squarely before this court is the issue of whether FUSFSPA retroactively overrules McCarty. The principal provision regarding retroactivity is 10 United States Code section 1408(c)(1),[3] which provides: “Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.”
Four decisions have discussed the retroactive application of FUSFSPA: In re Marriage of Buikema (1983) 139 Cal.App.3d 689 [188 Cal.Rptr. 856]; In re Marriage of Frederick (1983) 141 Cal.App.3d 876 [190 Cal.Rptr. 588]; In re Marriage of Hopkins (1983) 142 Cal.App.3d 350 [191 Cal.Rptr. 70]; and In re Marriage of Ankenman (1983) 142 Cal.App.3d 833 [191 Cal.Rptr. 292].
In Buikema, the final (Mar. 31, 1981) judgment of dissolution awarded one-half of the community interest in the portion of the military pension that accrued during marriage to the wife. Mr. Buikema appealed, alleging an award of the community interest in the military retirement pension to his ex-wife was improper. Pending the appeal, the McCarty decision came down and FUSFSPA was enacted. The Buikema court stated: “However, retroactivity is now a moot issue because McCarty is no longer the law. On February 1, 1983, the Uniformed Services Former Spouses’ Protection Act (Pub.L. No. 97-252), an amendment to title 10 of the United States Code, became effective. The act overrules McCarty, stating ‘a court may treat disposable retired or retainer pay to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.’ (10 U.S.C. § 1408(c)(1).) *27 California law treating military retirement pensions as community property is no longer preempted. The act’s legislative history clearly indicates Congress’ intent to abrogate all applications of the McCarty decision (see J. Explanatory Statement of the Com. of Conf. on Pub. L. No. 97-252 from House Conf. Rep. No. 97-749, Aug. 16, 1982, pp. 166-168, Cong. Rec., vol. 128 (1982)). The law as it now stands supports the superior court’s division of Kenneth’s military retirement pension. ” (Id., at p. 691.)
In Frederick, the October 20, 1981, interlocutory judgment included a stipulation dividing the husband’s military pension and allocating 46 percent of such pension to the wife. Later, the husband successfully moved to set aside the interlocutory judgment and to “hold in abeyance” further rulings on the military pension. The court ruled because certiorari had been granted in the McCarty case and because there was some uncertainty as to the future law regarding military pensions, it would be easier to hold the case in abeyance in the trial court than it would be to file an appeal. The Court of Appeal held that the trial court erred in setting aside the interlocutory judgment under Code of Civil Procedure section 473 where no change of law had actually occurred.
In discussing the retroactivity of FUSFSPA, the Frederick court noted the reference to June 25,1981, in section 1408(c)(1) could only be applicable to the date of the McCarty decision: “[T]he use of the date McCarty was decided as a reference in United States Code section 1408(c)(1), in our opinion, evidences a legislative intent that the law relative to community property treatment of military retirement pensions be as though McCarty did not exist, i.e., that such pensions would be subject to division as community property both before and after June 25, 1981. [Citing Buikema.]
“Thus, the enactment of the Uniformed Services Former Spouses’ Protection Act has rendered moot the dispute in the present case, since there is no longer any McCarty rule to be retroactively applied, ...” (Frederick, at pp. 879-880.)
In Hopkins, the December 22, 1980, judgment divided the military pension based on the actuarially computed value presented by the wife. After judgment Mr. Hopkins moved for reconsideration, offering for the first time evidence regarding valuation. The motion was denied pre-McCarty. The appeal followed. The Hopkins court states: “. . .To apply full retroactivity would leave the great balance of the domestic judgments rendered in this state in the last 40 years in the position that Congress now says they should be, i.e. decided under California law. To do otherwise would be chaos. [Fn. omitted.]
*28 “Not to apply the Act retroactive to June 25, 1981, would yield far more problems than would any mechanical application of a calendar-determining set of laws. To allow cases decided, but not yet final, either before or during the relatively short interval of McCarty to be subject to the McCarty rule would carve out of the many persons entitled to military pensions a fortunate or unfortunate few who had substantial rights determined by the vagaries of the calendar. It would create a gap of some 20 months in which their future entitlements were or were not to be determined in a manner different from the 40 years before or the indefinite future after. ...” (In re Marriage of Hopkins, supra, 142 Cal.App.3d at pp. 358-360.)
The post-McCarty interlocutory order in Ankenman granted Mr. Ankenman all of the military retirement benefits as his separate property. No retention of jurisdiction was requested by Mrs. Ankenman. On appeal from the denial of two motions under Code of Civil Procedure section 473, the Court of Appeal found FUSFSPA “undermined the impact of McCarty in this State.” (Ankenman, supra, 142 Cal.App.3d at p. 835.) The court relied on Buikema and FUSFSPA’s legislative history.
The distinction between the present case and the Buikema, Frederick, Hopkins, and Ankenman cases is that here the trial court, in reliance on McCarty, expressly set aside the wife’s previously ordered right to participate in the husband’s pension. In Ankenman the original ruling was post-McCarty. In Buikema, Frederick and Hopkins no such ruling was made post -McCarty. However, the language of FUSFSPA, the congressional intent as set forth in the materials cited in Buikema and the equitable considerations in Hopkins require the decision of this court to be the same.
California law before McCarty held that military retirement pay was community property subject to division on divorce. (See In re Marriage of Fithian (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den. (1974) 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41]; In re Marriage of Milhan (1980) 27 Cal.3d 765 [166 Cal.Rptr. 533, 613 P.2d 812] (vacated by 453 U.S. 918 [69 L.Ed.2d 1000, 101 S.Ct. 3152]).)
In the present case the court’s decision has not become final, but remains open through this appeal. Because Mr. Sarles has not yet qualified for his pension, no pension rights have been paid and he will not receive any longevity retirement benefits until he completes his 20 years of service in 1985.
Because no payments were made under the pension during the period June 25, 1981, through February 1, 1983, there is no merit to Mr. Sarles’ argument *29 that section 1006(b),[4] prohibits the granting of any of his pension rights to Mrs. Sarles. Further, section 1006(b) does not apply to the determination of retroactivity under section 1408(c), but to court ordered payments post-February 1, 1983. Those issues are not presently before this court.
Mr. Sarles further argues the order presently under review was a “final” court order under section 1408(a)(2) before the McCarty decision. If so, Mr. Sarles infers that FUSFSPA would not apply. Since Mr.Sarles expressly argued the effect of McCarty to the trial court, this argument has no merit. Since neither the interlocutory order nor the trial court’s modification order provides for the payment of any amount expressed in dollars or as a percentage of disposable retired or retainer pay, they are not “final.” (10 U.S.C. § 1408(a)(2)(C).) The parties’ purpose in retaining jurisdiction was to allow for a numerically proper division of the military pension after completion of Mr. Sarles’ service.[5]
Mr. Sarles finally contends California does not have appropriate jurisdiction under 10 United States Code section 1408(c)(4).[6] Mr. Sarles appeared generally in this proceeding and entered into an agreement, stipulation and waiver including the retention of jurisdiction over his military pension. Therefore California’s jurisdiction under FUSFSPA is clear. (§ 1408(c)(4)(C).) Once a party has generally consented to a court’s jurisdiction, it may not be attacked later. (Brown v. Douglas Aircraft Co. (1958) 166 Cal.App.2d 232, 239 [333 P.2d 59].)
It is clear that Congress has now provided power to each state through FUSFSPA to deal with military pensions in the manner in which it had previously treated them or chooses to treat them in the future. Under FUSFSPA, neither federal preemption nor supremacy of the federal govem *30 ment as to military and defense matters are considerations. Because California has regularly applied a community property division to military pensions preMcCarty, and because that power has now been returned to the state by FUSFSPA, there does not appear to be any proper reason in the present proceeding to act to the contrary.
The trial court’s order entered October 23, 1981, is set aside.
Wiener, Acting P. J., and Work, J., concurred.

Assigned by the Chairperson of the Judicial Council.

McCarty v. McCarty (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], in essence held that military pensions were subject to federal control. This precluded state courts from dividing military pensions in dissolution proceedings.

At that time, Mr. Sarles had served 15 years, 8 months in the Marines. At the time of entry of the interlocutory order, 12 years and 1 month of service time had accrued during the marriage.

All statutory references are to the United States Code unless otherwise specified.

“Subsection (d) of section 1408 of title 10 United States Code, as added by section 1002(a), shall apply only with respect to payments of retired or retainer pay for periods beginning on or after the effective date of this title, but without regard to the date of any court order. ...” (Pub. L. No. 97-252, tit. X, § 1006(b).)
FUSFSPA was enacted as title X of Public Law No. 97-252, the Defense Act for fiscal year 1983. This has caused the numbering of the provisions therein to be somewhat confusing. Reference to section 1006 is to the Defense Act.

The parties’ original agreement to retain jurisdiction is authorized. (Civ. Code, § 4800; In re Marriage of Brown (1976) 15 Cal.3d 838, 848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; In re Marriage of Carl (1977) 67 Cal.App.3d 542, 546 [136 Cal.Rptr. 703].) Their agreement to defer the pension issues saves the expense of a premature appeal before the actual determination of the division of the pension.

Title 10 United States Code section 1408(c)(4), states: “A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.”